**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DENNIS WEBSTER,**

        **Plaintiff,**        **CIVIL ACTION NO. 12-cv-14903**

    **vs.**

                              **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Dennis Webster seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 14). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.**    **RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 11) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED.

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income with protective filing dates of June 8, 2010, alleging that he had been disabled since April 15, 2010, due to degenerative disc disease, right knee degenerative joint disease, left knee pain, diabetes, carpal tunnel syndrome, sleep apnea, obesity, and depression. (*See* TR 31.) The Social Security Administration denied benefits, and Plaintiff requested a *de novo* hearing, which was held on July 19, 2011, before Administrative Law Judge (ALJ) Jessica Inouye, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 29-40.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

### III.  PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

####   A.  Plaintiff's Testimony

Plaintiff was 41 years old at the time of the administrative hearing and 40 years old at the time of alleged onset. (*See* TR 50.) He lived in his father's house with his father, his wife, his mother, and his sister. (TR 50-51.) Plaintiff testified that he worked for the census bureau for about three weeks as a field surveyor in 2010, but other than that, he had no gainful employment between April 15, 2010, and the date of the hearing. (TR 51-52.) Plaintiff testified that he stopped working because he hurt his knee while he was walking (unrelated to his employment), and he then found out that he had diabetes. (TR 52-53.) No one else in his family home was working at the time of the hearing. (TR 64.) Plaintiff testified that his past employment included working in the shipping area at an auto parts retailer, as a cashier and a pizza maker at a pizza restaurant, unloading trucks at a retail store, and in various other jobs. (*See* TR 52-61.) Plaintiff graduated from high school and took some special-education classes. (TR 61-62.)

2

At the time of the hearing, Plaintiff was 5' 11" tall and weighed 330-340 pounds. (TR 63.) He testified that this was a normal weight for him but that his doctor wanted him to lose weight. (TR 63.) He added, however, that losing weight was difficult because of pain in his knee and his back. (TR 63.) Plaintiff testified that the pain in his left knee was the primary reason that he stopped working. (TR 64.) He told the ALJ that the problem started when he twisted his leg while walking and that he had surgery on the knee. (TR 65.) He testified that his insurance did not cover rehabilitation, so he followed his doctor's rehabilitation instructions at home. (TR 65.) He also stated, however, that his knee still hurt, so his doctor gave him cortisone shots, which only helped for about a week. (TR 65.) He also took Vicodin 750 for the pain, but his doctor had changed his medication to 15 mg of morphine, which Plaintiff said made it illegal for him to drive and made him drowsy. (TR 63, 65.)

Plaintiff testified that when he took his pain pills, he didn't feel any pain. (TR 64.) He noted that, "I walk every day but it, (sic) if I don't take my medicine it hurts. If I take it then I can, like I said, walk a mile and not even stop." (TR 66.) Without his pills, however, he could only walk for 15 to 20 minutes. (TR 64.) Plaintiff also testified that he had pain in his back, but only about twice a week, and only "[i]f I don't take my pain medicine." (TR 66.) He said that the pain in his back made it impossible for him to lift anything over 10 pounds or move anything over 15 pounds, like furniture in his home. (TR 69.) He also added that the pain could be bad enough to wake him up in the middle of the night if the pain medicine wore off. (TR 67.) Plaintiff further testified that the pain in his back would come on if he stood for more than 30 minutes or sat for more than 30 minutes. (TR 70.) Plaintiff then testified that he had sleep apnea, but it didn't "completely prevent [him] from working;" it just effected his mood. (TR 71.) And he also testified that his right hand would go numb two or three times a week. (TR 78.) He told the ALJ that he would flex his hand,

3

and after a while, it would feel better. (TR 78-79.)

With regard to his mental impairments, Plaintiff testified that he suffered from depression, but it didn't necessarily prevent him from doing work; it prevented him from performing quality work. (TR 72.) He told the ALJ that he couldn't interact with people and that he got mad easily. (TR 72.) When he got mad, he would yell and then get up and go outside. (TR 72.) Plaintiff testified that he was taking Prozac and that it was "helping a little." (TR 73.) He told the ALJ that he felt depressed about 25 days out of every month. (TR 73.) He further testified that he suffered from anxiety, which caused him to feel overwhelmed and "get a really bad attitude" in large crowds. (TR 75.) He stated that his doctor and therapist told him to "avoid stress, stressful situations." (TR 76.) When asked by his attorney, Plaintiff testified that he had been seeing a therapist at Community Mental Health (CMH) for about seven months. (TR 80.) He testified that he attended counseling sessions once every two weeks and that it had "helped a little bit" with his depression and anger. (TR 80.)

Plaintiff also told the ALJ that he was "helping out his [his] cousin" in his cousin's son's lawn care business. (TR 74.) He testified that he drives his cousin and his son around so that they can mow lawns while Plaintiff sits in the car. (TR 74.) He stated that he would spend about nine or ten hours a week with them and that he would get up and walk around outside of the car while they were working. (TR 74.) When asked if there were days when he just couldn't get out and drive, Plaintiff stated, "There's days I felt like that but I know he needs the money because he ain't got insurance so he can get his medications, so I just deal with it." (TR 75.)

Plaintiff testified that his typical day included driving his cousin around to mow lawns unless the weather was bad. (TR 77.) He typically returned home around noon and went to his bedroom to watch television. (TR 77.) He told the ALJ that he did not do dishes, help with dinner, or do

anything else around the house. (TR 77.) Plaintiff added that he and his wife would "go for little walks around the neighborhood." (TR 77.) He stated that he could take care of his personal needs on his own, but he would sometimes be so depressed that his wife had to remind him to take a shower. (TR 80.)

### B. Medical Record

Defendant asserts that "[t]he ALJ included a comprehensive summary of the relevant facts . . . in her decision and does not set forth any statement of facts. (Docket no. 14 at 8.) Plaintiff sets forth his "Medical Evidence" as an itemized list of 15 medical findings from his record without putting them in any context. (Docket no. 11 at 13-14.) Defendant, however, does not suggest that Plaintiff's listing is inaccurate. Thus, the Court, having conducted an independent review of Plaintiffs' medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion (TR 34-38) and as set forth in Plaintiff's Motion (docket no. 11 at 13-14). The Court will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### C. Vocational Expert's Testimony

The VE testified that Plaintiff's past work ranged from light to medium with an occasional heavy job. (TR 83.) She then described each of Plaintiff's previous jobs individually. (TR 83-86.) The ALJ then asked the VE the following hypothetical question:

> . . . Assume an individual of the claimant's age, education and past work experience. This hypothetical individual would require work which is non-production oriented, simple and unskilled with an SVP: 1 or 2. This work should be routine and repetitive if that would limit it further. This work should also be low stress with only occasional changes in the work, and occasional decision-making required as part of the job. This individual should not work in close proximity to coworkers, meaning the individual could not function as a member of a team. And with minimal direct contact with the public and no large crowds. This hypothetical individual could perform work in the light exertional range with a sit/stand option. Sit/stand option

5

> means the individual could sit or stand at will while performing the assigned duties. However, this individual is capable of standing for up to 30 minutes at a time, walking for up to 20 minutes at a time, and with normal breaks for a total of four hours in an eight-hour workday. This individual could sit for approximately 30 minutes at a time and with normal breaks for a total of xis hours in an eight-hour workday. This individual can perform pushing and pulling motions with the upper extremities within the aforementioned weight restrictions. However, I'm going to reduce the right lower extremity pushing and pulling to occasional. This individual can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. However, with the right upper extremity I'm going to reduce the gross motor skills, gross and fine motor skills to frequent instead of constant. This individual should avoid concentrated exposure to hazards of unprotected heights, moving machinery and vibrations. This individual can perform postural activities occasionally of climbing ramps and stairs, balancing, stooping, crouching. This hypothetical individual should not be required to climb ladders ropes and scaffolds, kneel or crawl as part of the work.

(TR 86-87.) The VE testified that such an individual could perform Plaintiff's past work as a census taker. (TR 87-88.) The ALJ asked the VE to assume that the census-taker position was not past relevant work and whether such an individual could perform any work in the national or regional economy. (TR 88.) The VE testified that such an individual could perform work as a crossing guard (56,120 jobs in the national economy and 1,180 jobs in the State of Michigan), a parking lot attendant (71,000 jobs nationally and 1,425 jobs in Michigan), or an inspector in the plastic's industry (27,640 jobs nationally and 1,475 jobs in Michigan). (TR 89-90.) And when asked, the VE stated that the DOT lists the crossing-guard job as "not requiring" the ability to stand. (TR 89.)

The ALJ then asked the VE to assume the same hypothetical person but add the requirements that the individual not be able to lift more than 10 pounds, only be able to push or pull bilaterally occasionally, and not be able to drive. (TR 90-91.) The VE testified that such an individual could work as a table worker (27,640 jobs nationally and 1,475 jobs in Michigan) or a surveillance monitor (19,690 jobs nationally and 530 jobs in Michigan). (TR 91.) The ALJ then asked the VE, "At what

point does being off task become work preclusive." (TR 92.) The VE testified that it "becomes a problem" when someone is off take 15 to 20 percent of the time. (TR 92.) The VE then testified that her testimony had been consistent with the DOT and SCO. (TR 93.)

When the ALJ had finished questioning the VE, Plaintiff's attorney asked for clarification and whether the "table worker" position was included in the work that the hypothetical individual could perform. (TR 93.) The VE testified that table worker should have been left out, at which time the ALJ asked for clarification because the VE had previously testified that the table worker job did meet the ALJ's requirements under the her second hypothetical. (TR 93-94.) The ALJ then repeated her second hypothetical question, at which time the VE testified that the only position she could find that such an individual could perform was the surveillance monitor position. (TR 95-96.) The ALJ asked Plaintiff's attorney if he had "anything further before we close the hearing." (TR 96.) Plaintiff's attorney responded, "Not at this point, Judge." (TR 96.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2010, and that Plaintiff met the insured status requirements of the Act through December 31, 2013. (TR 31.) At step 2, the ALJ found that Plaintiff suffered from severe "degenerative disc disease, right knee degenerative joint disease, left knee pain status post arthroscopy, diabetes mellitus, carpal tunnel syndrome, sleep apnea, obesity, and depression. (TR 31.) At Step 3, the ALJ found that Plaintiff had moderate restrictions in daily living and moderate difficulties in social functioning and concentration, persistence, or pace; thus, the ALJ found that Plaintiff's impairments did not meet or equal one of the listed impairments. (TR 31-33.) The ALJ then found that retained the residual function capacity to perform light work with the following additional limitations:

> . . . [Plaintiff] requires work which is non-production oriented, simple, and unskilled

> with an SVP of 1 or 2. The work should be routine and repetitive. This work should also be low stress, with only occasional changes in the work and only occasional decision-making required as part of the job. The claimant should not work in close proximity to coworkers, meaning he cannot function as a member of a team, and he should have minimal direct contact with the public and no contact with large crowds. He requires a sit/stand option at will. He is capable of standing for up to 30 minutes at a time, working for up to 20 minutes at a time, and, with normal breaks, standing and/or walking for a total of four hours in an eight-hour workday. He can sit for approximately 30 minutes at a time and, with normal breaks, a total of six hours in an eight-hour workday. The claimant can perform pushing and pulling. He can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching. However, with the right upper extremity, gross and fine motor skills are reduced to frequent instead of constant. The claimant should avoid concentrated exposure to hazards, such as unprotected heights, moving machinery, and vibrations. He can occasionally climb ramps and stairs, balance, stoop, and crouch. However, he can never kneel, crawl, or climb ladders, ropes, or scaffolds.

(TR 33-34.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 39-40.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time the date of his alleged onset through the date of the ALJ's decision. (TR 40.)

**V.      LAW AND ANALYSIS**

      **A.      Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts

in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth

9

step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be remanded under sentence four because (1) the ALJ failed to fully develop the administrative record when she did not request records related to Plaintiff's care at Community Mental Health (CMH); (2) the ALJ improperly weighed the findings of Dr. Mark Deskovitz, a consultative examiner; and (3) the ALJ improperly relied on the VE's testimony because the VE's testimony was

10

confusing and inaccurate. (Docket no. 11 at 7-15.)

### 1. Records from CMH

While Plaintiff's testimony and his brief accompanying his instant motion make it clear that Plaintiff sought and received treatment for his depression from Community Mental Health (CMH) from at least January 2011 through July 2011, no records from CMH were produced for inspection by the ALJ. Indeed, the ALJ noted as much: "The claimant testified he gets counseling at CMH every other week; however, there are no records in evidence from this facility." (TR 36.)

Plaintiff asserts that the ALJ "should have requested the treatment notes or required plaintiff's prior counsel to obtain and provide the records" and that failure to do so is reversible error. (Docket no. 11 at 15.) Further, Plaintiff asserts that the ALJ compounded this error by "improperly assum[ing] that the plaintiff's lack of medical treatment indicated that the allegations were not credible." (*Id.* at 16.) In support of these contentions, Plaintiff relies on the general rules that "an ALJ must fully develop the evidence and facts" in reaching a determination and that "[s]ubstantial evidence cannot be created by the absence of evidence." (*Id.* at 15-16.)

20 C.F.R. § 416.912 provides, in relevant part, as follows:

(a) General. In general, *you have to prove to us* that you are blind or disabled. This means that *you must furnish medical and other evidence* that we can use to reach conclusions about your medical impairment(s). . . .

. . .

(c) *Your responsibility*. *You must provide medical evidence* showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. *You must provide evidence*, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim. . . .

. . .

(d) *Our responsibility*. Before we make a determination that you are not disabled, we

11

> will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. *We will make every reasonable effort to help you get medical reports from your own medical sources* when you give us permission to request the reports.
>
> > (1) Every reasonable effort means that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. . . .

10 C.F.R. § 416.912 (emphasis added). Thus, as a general matter, it is a claimant's burden to provide a complete record, but the ALJ must put forth the statutorily required "reasonable effort" to assist the claimant.[1] *See, e.g.*, *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("[T]he claimant must demonstrate that she has a 'severe impairment.'" (citation omitted)); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] . . . to make a disability determination, rests with the claimant."); *cf.* 42 U.S.C. § 405(g) (The sixth sentence of this provision . . . requires a claimant seeking remand based on "new evidence" to show "good cause" why the evidence was not previously "incorporate[d] . . . into the record.").

---

[1] "'[A]n [ALJ's] . . . basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him.' . . . To satisfy this special duty[,] the [ALJ] . . . must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' . . . He must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Teverbaugh v. Comm'r of Soc. Sec.*, No. 02-71076, 2002 WL 32087466, *5 (E.D. Mich. Dec. 30, 2002) (Morgan, M.J.) (quoting *Lashley v. Sec'y of Health & Humans Serys.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (citations omitted)) (omissions and modifications in original), *rejected in part on other grounds by Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702 (E.D. Mich. 2003) (Roberts, J.). Here, however, Plaintiff neither alleges nor could he support any assertion that the ALJ was required to undertake such a special duty. Instead, Plaintiff contends that the ALJ failed to fulfill her basic obligation to put forth a reasonable effort in assisting Plaintiff.

As Defendant argues, Plaintiff's argument lacks merit in light of Plaintiff's attorney's acknowledgment before the ALJ that the record was complete:

> ALJ: All right. Any objections to the exhibits?
>
> ATTY: None.
>
> ALJ: And do we have everything?
>
> ATTY: Yes. The only think I might add is that he does see Dr. Bruma [Plaintiff's treating physician] this Thursday. If you would like to have an updated record from her, I can get that for you.
>
> ALJ: Let's see how it goes.

(TR 49.) Plaintiff's attorney knew that Plaintiff was being treated by CMH. (*See* TR 80 (wherein Plaintiff's attorney questioned Plaintiff about his treatment at CMH).) Thus, the ALJ did not fail in his ability to "*help* [Plaintiff] get medical reports" from CMH when Plaintiff's attorney indicated that the record was complete.

Moreover, as Defendant contends, "Plaintiff's testimony suggested that if anything, the missing [CMH] Records would have further supported the ALJ's finding that Plaintiff was not disabled, as Plaintiff indicated that he benefitted from the counseling he received there." (Docket no. 14 at 21.) The Court agrees. The ALJ noted that Plaintiff treats with his primary care physician for his depression, that his physician found that he "does not exhibit a depressed mood or agitation," and that his "mood was better and he seemed happier once he started [Prozac]." (TR 36.) Further, even if Plaintiff later determined that the CMH Records would have supported his position, he has not presented such evidence to the Court by way of a sentence-six remand request, and he did not present such evidence to the Appeals Council. *See, e.g.*, Lockwood v. Commissioner of Social Sec., No. 07-CV-602, 2008 WL 4290844, *8 (W.D. Mich. Sept. 18, 2008). Therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

13

### 2.     Dr. Deskovitz's Opinion

Plaintiff underwent a psychological evaluation by a state consultative examiner, Dr. Mark A. Deskovitz, Ph.D., on September 16, 2010. (TR 356-60.) Dr. Deskovitz opined that Plaintiff "did not appear to have a tendency to exaggerate or minimize symptomology" and that his "[m]ental activity can best be described as impaired, as he had difficulty recalling bits of information and staying on task." (TR 358.) He noted that Plaintiff's "emotional reaction can best be described as depressed." (TR 358.) Dr. Deskovitz diagnosed Plaintiff with "Major Depressive Disorder, severe, recurrent, without psychotic features," and he assigned Plaintiff a GAF score of 50. (TR 360.) He gave Plaintiff a "guarded" prognosis, but noted that this "may improve if the claimant were to receive adequate mental health treatment." (TR 360.) Plaintiff's records were reviewed by Judy Strait, Psy.D., L.P., who opined that "claimant would have difficulty with complex tasks and demanding work environments." (*See* TR 37.) She opined that his social functioning was reduced, that he may not work well with the general public, and that he retained the capacity to perform routine, 2-step tasks on a sustained basis. (*See* TR 37.) The ALJ afforded "great weight" to Dr. Strait's opinion and "little weight" to Dr. Deskovitz's opinion, finding that Dr. Strait's opinion was consistent with the medical evidence of record while Dr. Deskovitz's opinion was "not consistent with the objective medical evidence, the claimant's activities of daily living, or the doctor's own clinical findings." (TR 37.)

Plaintiff argues that the ALJ erred when he afforded little weight to Dr. Deskovitz's opinion and instead relied on Dr. Strait's opinion. (*See* docket no. 11 at 9-11.) Although not entirely clear, it appears that Plaintiff relies on the contention that it was inappropriate for the ALJ to do so when Dr. Deskovitz saw Plaintiff in person and Dr. Strait merely reviewed Plaintiff's records. (*Id.*) The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and

14

laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). But the opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e). Neither Dr. Deskovitz nor Dr. Strait were Plaintiff's treating physician. Thus, under section 1527(c), neither of the opinions at issue in this matter are afforded greater weight as a matter of law, and therefore, the ALJ's did not err in affording greater weight to Dr. Strait's opinion. *See, e.g.*, *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006). The ALJ gave good reasons for affording each opinion the weight that she did. Those reasons are "supported by the evidence in the case record, and [are] sufficiently specific to make clear to [the Court and Plaintiff] the weight [she] gave to the . . . medical opinion[s] and the reasons for that weight." *See Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). Therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

### 3. The ALJ's Reliance on the VE's Testimony

Plaintiff argues that "the testimony given by the [VE] is confusing and convoluted," and "[i]t is difficult to decipher what occupations could be performed by Plaintiff, if any." (Docket no. 11 at 18.) While the VE's testimony was not a model of clarity, the Court does not agree with Plaintiff. In response to the ALJ's first hypothetical question, the VE testified that such an individual could perform work as a crossing guard, a parking lot attendant, or an inspector in the plastics industry. And in response to the ALJ's second hypothetical, the VE testified that such an individual could work as a table worker or a surveillance monitor. (TR 91.) When asked to later clarify, the VE

testified that table worker should have been left out, and the VE then testified that the only position she could find that such an individual could perform was the surveillance monitor position. (TR 95-96.) Neither the ALJ nor Plaintiff's attorney appeared confused by this testimony at the conclusion of the hearing: the ALJ asked Plaintiff's attorney if he had "anything further before we close the hearing." (TR 96.) Plaintiff's attorney responded, "Not at this point, Judge." (TR 96.) Thus, Plaintiff's argument is without merit.

Plaintiff also argues that the ALJ erred when she (1) did not question the ALJ regarding the interaction with the public required by a crossing guard or a parking lot attendant, and (2) did not require the VE to provide DOT codes for the plastic inspector position. (Docket no. 11 at 19.) Plaintiff's argument with regard to the possible interaction with the public by a crossing guard or a parking lot is mere speculation. Moreover, "'nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Wilson v. Comm'r*, No. 10-13828, 2011 WL2607098, *6 (E.D. Mich. July 1, 2011) (Cohn, J.) (quoting *Martin v. Comm'r*, 170 F. App'x 369, 374 (6th Cir. 2006)). And "even with the inconsistencies [(alleged herein by Plaintiff)] and the failure to provide the DOT codes, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT." *Wilson,* at *6 (citing *Conn v. Sec'y of HHS*, 51 F.3d 607, 610 (6th Cir. 1995)). The ALJ asked the VE if her testimony had been consistent with the DOT, to which the VE responded, twice, that it was. (TR 82, 93.) Plaintiff and his attorney had a full and fair opportunity to cross-examine the VE and did so with respect to other issues; and when asked, Plaintiff's attorney acknowledged that he had no further questions. (TR 96.) Therefore, the Court recommends denying Plaintiff's Motion with regard to this issue.

**VI.    CONCLUSION**

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 11) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 14) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 29, 2013        s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 29, 2013     s/ Lisa C. Bartlett
                            Case Manager